## Case No. 16,258.

UNITED STATES v. SEVENTY-EIGHT CASES OF BOOKS.[1]

[2 Bond, 271.][2]

District Court, S. D. Ohio. April Term, 1869.

CUSTOMS LAWS—FORFEITURE FOR UNDERVALUATION — INFORMATION — NECESSARY AVERMENTS — INTERCOURSE WITH CANADA—REPEAL OF STATUTES.

1. In an information under section 66 of the act of congress of 1799 [1 Stat. 677], alleging fraud in the importation of merchandise at an undervaluation, it is necessary to aver that the valuation was under cost at the place of exportation.

2. The information in this case not containing this averment is defective, but the district attorney is permitted to amend.

3. In the additional or amended information, based on section 1 of the act of congress of March 3, 1863 [12 Stat. 737], it is not necessary to allege that the person making the fraudulent entry, was either owner, consignee, or agent of the property, if it appears from the statements of the information that the person making the entry was the owner, or acted as an agent of the owner.

4. An averment that the requirements of the statute have been complied with, which are merely directory to the officers of the revenue and the importer, is not necessary under the act of March, 1863.

5. The acts of 1799 and 1863 extend and apply to commercial intercourse between Canada and the United States as well as to other foreign countries.

6. Section 66 of the act of 1799 is not repealed by section 1 of the act of March, 1863, the latter being in aid of, or auxiliary to, the act of 1799.

Information of forfeiture for violation of customs laws.

Durbin Ward, U. S. Dist. Atty., and Henry Stanbery, for the United States.

Tilden & Stevenson and F. Lincoln, for claimants.

LEAVITT, District Judge. The questions before the court arise on exceptions in the nature of a demurrer to the original information, and the first charge in the amended information. The original information alleges as the ground of forfeiture that seventy-eight boxes of books were imported into the United

States from the port of Sarnia, in Canada, to the port of Port Huron, in the United States; that on November 4, 1868, some person, to the district attorney unknown, made an entry at the last-named port on an invoice, purporting to be an invoice of all the books contained in said boxes, at their actual cost, as required by the act of congress of March 3, 1799; that it was afterward found that said invoice and entry were false and fraudulent, and that the person who had possession of said books unlawfully, knowingly, and fraudulently entered the same at said port, and invoiced them below the actual cost thereof, with intent to defraud the United States of the duties imposed thereon by law, contrary to the statute, whereby said books became forfeited to the United States. This information is based upon section 66 of the act of March 3, 1799, which provides, "that if any goods, wares, or merchandise, of which entry shall have been made in the office of a collector, shall not be invoiced according to the actual cost thereof, at the place of exportation, with design to evade the duties thereon, or any part thereof, all such goods, wares. or merchandise, or the value thereof, shall be forfeited."

It is objected to this information that it is defective in not averring that the alleged false and fraudulent invoice of the books was below their actual cost at the place of exportation. The averment is, that they were invoiced below their actual cost, but it is not averred that it was below their actual cost at the place of exportation. The question is, whether such an averment is not necessary to sustain the information. The courts of the United States, in administering the navigation and revenue laws, have been uniformly liberal in their practice, and in their construction of statutes on these subjects. But I can find no case in which they have held that an information, which did not describe substantially the statutory offense on which a forfeiture was claimed, could be sustained. The case of The Hoppet, 7 Cranch [11 U. S.] 389 (2 Pet. Cond. R. 542), and the case of The Nancy [Case No. 10,008], have a direct bearing on this subject.

Now, it is clear, as to this information, that there is no averment that the offense defined in section 66 of the act of 1799 has been committed. It is merely alleged that the goods were invoiced below their actual cost, but the important averment, that it was below their actual cost at the place of exportation, is omitted. The statute makes this a material element as a ground of forfeiture, and it should have been averred in the information. In the case referred to, Chief Justice Marshall held, "that the information is not made good by the averment that the offense was committed against the provisions of certain sections of the act of congress." The offense must be specifically defined, that the claimants may know with certainty what are the grounds on which a forfeiture is claimed.

---

[1] [The proceedings embraced in this and the two following reports (Cases Nos. 16,258a and 16,258b) are comprised in one report in 2 Bond, 271–286.]

[2] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

The averment, merely, that the books were invoiced below their actual cost, without alleging that it was below the actual cost at the place of exportation, does not advise the claimant of the charge he is required to meet. If desirous of taking testimony to rebut the charge of a fraudulent invoice, as being below cost, the information leaves it wholly uncertain as to the place and it would be impossible for him to prepare a defense. The exception to the original information is, therefore, sustained on the ground referred to, but the defect is amendable, and the district attorney has leave to amend his information.

And this brings the court to the consideration of the exceptions to the amended, or, as it is called, additional information, filed by the district attorney on the 17th of March.

I. The first ground of exception to the second information is, that it does not allege "that the person who caused the goods mentioned in said information to be imported into the United States, and who made an entry thereof below their value, by means of an undervaluation in a false and fraudulent invoice, was either the owner, consignee, or agent of the owner of said goods." The second or additional information is based on section 1 of the act of congress of March 3, 1863. It avers, in substance, that one Henry J. Shaw, having the custody and control of two hundred and four boxes or packages of books, subject to duty, caused the same to be transported from Sarnia, in Canada, in a boat or vessel, across the St. Clair river, to the port of Port Huron, in the United States, and imported the same at said port, and made, or caused to be made, an entry of the books, upon an invoice setting forth their value greatly below their value at Sarnia, or in said dominion of Canada, or at Port Huron, and greatly below their cost in the country from which they were imported; that such undervaluation was with the unlawful intent of causing an entry to be made to evade the payment of the just and full amount of the duties chargeable thereon; that seventy-eight cases or boxes, of the two hundred and four cases or boxes so entered. were sent to Cincinnati for sale, and were there seized as forfeited, and that said seventy-eight cases were by Shaw, or by his procurement, knowingly and fraudulently invoiced greatly below their true value at Sarnia, or in the dominion of Canada, or at Port Huron, or the principal markets of Canada, or in the country whence they were exported, with intent to evade the payment of duties, and contrary to the statute.

The question arising on the first exception to the first count of the amended information just referred to, is, whether it is necessary to aver in the information that the entry of the books alleged to have been fraudulently invoiced, was made by the owner, consignee, or agent. It is not so alleged in the information, but it is averred that the books were in the custody of, and under the control of

Shaw, and that he caused the same to be fraudulently entered at an undervaluation.

Section 1 of the act of March 3, 1863, after prescribing with great minuteness the prerequisites to a legal entry of property imported from a foreign country, subject to an import duty, provides that after July 1, 1863, no goods, wares, or merchandise imported into this country, shall be admitted to entry without a full compliance with the requirements of the statute; one of which is, that the invoice shall be verified by the oath of the owner, or consignee, or an authorized agent of the owner or consignee. And the penal clause of the section declares, "that if any such owner, consignee, or agent . . . shall knowingly make, or attempt to make, an entry thereof, by means of any false invoice, . . . or of any invoice which shall not contain a true statement of all the particulars hereinbefore required, or by means of any other false or fraudulent document or paper, or of any other false or fraudulent practice or appliance whatsoever, . . . such goods, wares, and merchandise shall be forfeited," etc.

Does the first count of the second information contain averments of a fraud, which, within the scope of the statute, subjects the property in question to forfeiture, and sufficient to require the claimants to answer the charge of fraud? As before stated, the exception insisted on, to this part of the information, is, that it does not allege that the party making the false invoice was either owner, consignee, or agent. It is true there is no direct averment of this fact. But it is averred that the books were in the custody of, and under the control of Shaw, who is charged with making the fraudulent invoice. This is equivalent to an allegation that he was the agent. He who has for the time being, and for a special purpose, the custody and control of another's property, is his agent. And it would not be a strained construction of the statute, that Shaw, who made the entry of the books, acted as the agent of the owners, within the fair import of the law.

But if this view is erroneous. another inquiry pertinently arises, namely, whether it was necessary to allege the fact, that the person making the entry was either owner, consignee, or agent. It is well settled law, that what is mere matter of defense need not be set out in an information. All that is required, is that enough should be stated to show a violation of the statute. The gist of the offense which subjects property to forfeiture under the section of the law referred to, is the procurement of an entry of goods imported from abroad by means of a false and fraudulent invoice. It is distinctly charged that Shaw caused an entry to be made, under such an invoice, with knowledge that the prices were greatly below the actual value of the property, and with the intent thereby to defraud the government of the legal duties imposed by law. This is the substan-

·tial charge relied on as the ground for the forfeiture of this property, set forth by clear and distinct averments, and which the claimants are required to meet. Whether Shaw was or was not the agent of the owner is an incidental fact, in no sense affecting the charge of fraud in the entry of the books. If the invoice·made by him was false and fraudulent, it is immaterial in what capacity, or under what pretenses he made it. If false and fraudulent, the property entered was forfeited when the fraud was perpetrated, without reference to the capacity in which he acted.

It may be said, also, as showing the sufficiency of the count under consideration, that no skillful pleader would consider it safe to make the positive averment in the information, that Shaw was either the owner, consignee, or agent of this property. If such an allegation had been made, it would be necessary to prove it as alleged. But the person making the entry may have given false information to the collector, and represented himself as owner, consignee, or agent contrary to the fact. It would be unsafe,· therefore, to allege as a fact what on the hearing would be disproved, and thus prevent a decree of forfeiture. Or the case may be supposed, that the person making the entry refuses to declare in what relation he stands to the property; shall the object of the law be thwarted by such refusal?

There is still another exception to the first count of the second information strenuously urged by counsel, namely, that it is not alleged that the invoice by which the fraudulent entry was made, was made, or certified to, before a consul, vice-consul, or other commercial agent of the United States. Section 1 of the act of March 3, 1863, before referred to. requires all invoices of goods or merchandise, imported into the United States from a foreign country, to be made in triplicate, and signed by the person owning or shipping the same; and that the invoices shall, at or before the shipment, be produced to the consul, vice-consul, or commercial agent of the United States nearest the place of shipment, and shall have indorsed on them a declaration by the purchaser, manufacturer, owner, or agent that the invoices are in all respects true.

Such are the plain requirements of the statute, but it does not follow, that in a proceeding to condemn property for a fraudulent entry by means of a false invoice, it is necessary to aver in the information that all the formal requirements of the statute, as to the verification of the invoice prior to the shipment, are to be specially set out, with an averment that they have been complied with. These provisions are directory to, and obligatory upon, persons importing goods from a foreign country, and on all officers of the United States intrusted with the execution of the import laws. They are intended to insure the payment of all lawful duties

imposed by law, and to guard the government against frauds in the collection of its revenue. But in a proceeding—to condemn property for frauds in its importation, it is surely no defense that the owner or importer has failed in any particular to comply with the law; nor can it be tolerated that neglect of duty by an officer of the United States, whether resulting from his ignorance or corruption, shall shield property infected with fraud from the condemnation to which it is subject by law. It would be strange. indeed, if the default of the foreign owners or shippers of the property in question, in not having made out and authenticated triplicate invoices of the property shipped, could be a vindication of a fraud committed at the port of entry in this country. If it were so, the government would have a beggarly account of import duties, as it would be a facile way for a foreign owner or shipper to evade the payment of duties, and secure himself against a forfeiture of his property, by willfully neglecting to comply with a prerequisite of the law. It seems clear, therefore, that any irregularities or omissions, on the part of the importers or owners in doing what the law required, is no answer to the charge of fraud in causing the goods to be entered at an undervaluation, with intent thereby to evade the payment of the lawful duties.

From these considerations, ·without enlarging on this point, the court is led to the conclusion that the second ground of exception to the information must be overruled.

But there is a further ground urged in argument, though not set forth in the exceptions filed, that as the importation alleged in the information was from a port or place in Canada, the acts of March 3, 1799, and March 3, 1863, do not apply, and that no legal ground of seizure is therefore stated. This point not being presented in the exceptions filed, might perhaps be passed without notice. The argument is that the acts of 1799 and 1863 refer to, and embrace only, ocean commerce, and do not extend it to commercial intercourse with countries adjacent to the United States, under foreign dominion. And the acts of 1821 and 1823, and perhaps other statutes regulating trade and intercourse between the United States and Canada, as applicable to the importation of the books in question, are referred to. Without stopping to examine and analyze these acts, it seems to the court that the exception under consideration is fully answered by a reference to the first section of the act of 1863. That act, being the latest in date on the subjects embraced in it, must be regarded as superseding any prior legislation in conflict with its provisions. The first clause of the first section of that act in terms applies "to all invoices of goods, wares, and merchandise imported from any foreign country into the United States." And in a subsequent clause, before recited, specifies

and denounces the penalty for any fraudulent practices, in invoicing and entering property subject to duty, with intent to evade the payment of duties. Among these the act of knowingly making, or attempting to make, an entry by means of "any false invoice" is mentioned, and a forfeiture provided for, as the penalty for the act. Now, if an importation from a port in Canada is an importation from a foreign country, which can not, of course, be controverted, it follows that it is not only within the scope and intention of the act of 1863, but within its terms. And this remark applies with equal force to the act of 1799, so far as it is not repealed by repugnant and conflicting provisions of subsequent acts.

It is perhaps not material to notice the argument of the learned counsel for the claimants, intended to prove that the act of 1799 is wholly repealed by the later legislation of congress. On that question there is an authority, which, I think, is applicable and decisive. I refer to the case of Wood v. U. S., 16 Pet. [41 U. S.] 342. It is true the case was decided in 1842, and could, therefore, have had no reference to the act of 1863. But the principles laid down by the learned Judge Story, in giving the opinion of the court, have a direct application to the question of the repeal of section 66 of the act of 1799. After referring to the fact that there had been legislation on the subject of foreign importations, subsequent to the passage of that act, the court say, at page 362: "The question then arises whether section 66, of the act of 1799 has been repealed, or whether it remains in full force. That it has not been expressly or by direct terms repealed, is admitted; and the question resolves itself into the more narrow inquiry whether it has been repealed by necessary implication. We say, by necessary implication, for it is not sufficient to establish that subsequent laws cover some, or even all, the cases provided for by it; for they may be merely affirmative, or accumulative or auxiliary. But there must be a positive repugnancy between the provisions of the new laws and those of the old; and even then the old law is repealed by implication only pro tanto, to the extent of the repugnancy. And it may be added, that in the interpretation of all laws for the collection of revenue, whose provisions are often very complicated and numerous, to guard against frauds by importers, it would be a strange ground to assert that the main provisions of any such laws sedulously introduced to meet the case of a palpable fraud, should be deemed repealed, merely because in subsequent laws other persons and authorities are given to the custom-house officers, and other modes of proceeding are allowed to be had by them before the goods have passed from their custody, in order to ascertain whether there has been any fraud attempted upon the government. The more natural, if not the necessary infer-

ence in all such cases, is that the legislature intend the new laws to be auxiliary to, and in aid of the purposes of the old law, even when some of the cases may equally be within the reach of each. There ought certainly under such circumstances, to be manifest and total repugnancy in the provisions to lead to the conclusion that the latter laws abrogated, and were designed to abrogate the former."

This reasoning certainly applies to the question before the court, and sanctions the conclusion that section 66 of the act of 1799 is not repealed, so far as it contains provisions not repugnant to the act of 1863. While the latter act changes and makes more specific the duties of importers and collectors of customs, it leaves unrepealed many of the provisions of the old law, showing, in the language of Judge Story, that it was intended the later law "should be auxiliary to, and in aid of the purposes of the old law."

I have only to add, that with the amendment indicated as necessary to the information originally filed, it may be sustained under section 66 of the act of 1799.

The exceptions to the first count of the additional or amended information are overruled.

[See Cases Nos. 16,258a and 16,258b.]